## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TANYA FITTS,<br><br>      Plaintiff<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant | CIVIL ACTION NO. 4:15-CV-00631<br><br>(MEHALCHICK, M.J.) |

## **MEMORANDUM OPINION**

This is an action brought under Section 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Tanya Fitts's claim for supplemental security income under the Social Security Act. This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 13; Doc. 14). For the reasons expressed herein, the Commissioner's decision shall be VACATED and this matter shall be REMANDED to the Commissioner to conduct a new administrative hearing.

**I. BACKGROUND & PROCEDURAL HISTORY**[1]

Ms. Fitts was forty five years old when she filed the instant application for supplemental security income. (Admin. Tr. 29, Doc. 11-2, at 30). She testified that she attended special education classes in school until she dropped out at the end of her eleventh grade year. Ms. Fitts reported that she tried to get her GED, but could not pass the exam. (Admin. Tr. 45, Doc. 11-2, at 46). Ms. Fitts has past work at the light exertional level as a Cashier, Housekeeping Cleaner, and Fast Food Worker. As noted in her brief, Ms. Fitts's work history is somewhat sporadic. She has accrued only 13 quarters of covered earnings between 1993 and 2012 (the year she applied for benefits). (Admin. Tr. 157, Doc. 11-5, at 12). The sum of her lifetime earnings amounts to less than twenty thousand dollars. *Id.* Ms. Fitts initially alleged that she was unable to word due to her heart, back and hip pain, vertigo, migraines, and acid reflux. (Admin. Tr. 192, Doc. 11-6, at 30). After IQ testing conducted during the pendency of the Social Security Administration's review of her claim yielded scores indicative of borderline intellectual functioning, she added the allegation that her intellectual disability also contributed to her inability to work. (Admin. Tr. 217, Doc. 11-6, at 55).

In response to Ms. Fitts allegations that she attended special education classes in school, the Social Security Administration referred Ms. Fitts to Dr. Anthony Fischetto for IQ and

---

[1] The administrative record in this case contains voluminous medical documents from various providers relating to a cascading array of both physical and mental impairments. Because the Court writes primarily for the benefit of the parties, it has limited discussion of the evidence to the medical records and other evidence that pertain to Ms. Fitts's intellectual disability, as the only issue raised on appeal is the contention that the ALJ erred by concluding that Ms. Fitts did not meet listing 12.05C of 20 C.F.R. Part 404, Subpart P, Appendix 1.

achievement testing. (Admin. Tr. 338, Doc. 11-7, at 114). Ms. Fitts was examined by Dr. Fischetto on June 5, 2012. Dr. Fischetto observed that Ms. Fitts appeared to be "a little slow cognitively." (Admin. Tr. 331, Doc. 11-7, at 107). Dr. Fischetto administered the fourth edition of the Wechsler Adult Intelligence Scale ("WAIS-IV") and received the following results: Verbal Comprehension score of 66, Perceptual Reasoning Score of 73, Working Memory score of 77, Processing Speed score of 86, and Full Scale IQ score of 70. (Admin. Tr. 332, Doc. 11-7, at 108). Dr. Fischetto noted that Ms. Fitts's scores appeared to be valid and consistent with her degree of functional restriction. Dr. Fischetto diagnosed Ms. Fitts with a Borderline IQ. *Id.*

Dr. Fischetto also submitted a medical source statement expressing his opinions about Ms. Fitts's functional abilities. (Admin. Tr. 329-30, Doc. 11-7, at 105-06). Dr. Fischetto assessed that Ms. Fitts would be markedly limited in the following activities: understanding and remembering detailed instructions; carrying out detailed instructions; making judgments on simple work-related decisions; responding appropriately to changes in a routine work setting; and responding appropriately to work pressures in a usual work setting. Dr. Fischetto assessed that Ms. Fitts would be moderately limited in the following activities: understanding, remembering and carrying out short, simple instructions; and carrying out short, simple instructions. Dr. Fischetto assessed that Ms. Fitts would be slightly limited in the following activities: interacting appropriately with the public; interacting appropriately with supervisors, and interacting appropriately with co-workers. Further, despite Ms. Fitts's assurances that she was able to manage money, Dr. Fischetto opined that Ms. Fitts would only be able to do so with some assistance.

On June 14, 2012, nonexamining State Agency psychologist Erin Urbanowicz completed a psychiatric review technique (PRT) assessment in which she opined that Ms. Fitts had a medically determinable severe impairment of intellectual disability.[2] (Admin. Tr. 81, Doc. 11-3, at 7). Dr. Urbanowicz also completed a mental residual functional capacity ("RFC") assessment in which she opined that Ms. Fitts retained the capacity to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment. (Admin. Tr. 86, Doc. 11-3, at 12). Dr. Urbanowicz also opined that Dr. Fischetto's assessment was an overestimate of the severity of Ms. Fitts's mental limitations because it lacked substantial support in the longitudinal medical records. *Id.*

Ms. Fitts's claim was denied at the initial level of administrative review on June 18, 2012. Thereafter, she requested an administrative hearing. On November 22, 2013, Ms. Fitts appeared with a non-attorney representative before Administrative Law Judge ("ALJ") Patrick S. Cutter.[3] Impartial vocational expert ("VE") Brian Bierley also appeared and testified. The ALJ denied Ms. Fitts's claims in a written decision dated January 15, 2014.

In the ALJ's January 2014 decision denying Ms. Fitts's claims, the ALJ found that Ms. Fitts had not engaged in substantial gainful activity, and that Ms. Fitts's alleged impairment of

---

[2] Dr. Urbanowicz found that Ms. Fitts had a medically determinable impairment that did not precisely meet the diagnostic criteria of listing 12.05 (mental retardation). In 2013, listing 12.05 was revised and now refers to "intellectual disability" rather than "mental retardation." 78 Fed. Reg. 46499 (Aug. 1, 2013). The substance of this listing, however, was not changed.

[3] The Commissioner's regulations permit a claimant to appoint a person who is not an attorney to represent the claimant in his or her dealings with the Social Security Administration. *See* 20 C.F.R. § 416.1505.

intellectual disability was one of several impairments that were both medically determinable and severe. At step three, however, the ALJ found that Ms. Fitts did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. With respect to listing 12.05 (intellectual disability) in particular, the ALJ found that:

> Specific to the consideration of Borderline Intellectual Functioning under listing 12.05, the undersigned notes that this listing has several threshold requirements that must be satisfied before the "paragraph A, B, C, or D" criteria are applicable, specifically that the medical evidence must document significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested prior to age 22. In this case, the undersigned finds these threshold requirements are not met. Specifically, the claimant does not demonstrate deficits in adaptive functioning consistent with listing-level intellectual disability, as she reports the mental capacity to care for her grandchildren, attend to her personal care, complete household tasks, cook, use public transportation, shop, handle money, and manage her finances independently (Exhibit 2E; Testimony). The undersigned also notes that the claimant has been able to engage in simple employment in the past, again inconsistent with listing-level deficits in adaptive functioning (Exhibits 3E and 7E). There is no mention of intellectual deficits in the medical evidence of record other than in the setting of a consultative disability examination; the undersigned finds this significant as the claimant specifically alleges disability due to borderline intellectual functioning, but did not even mention intellectual and adaptive deficits to any of her treating providers, including mental health providers, during the period at issue (*see* Exhibits 1F-6F and 9F-18F). Accordingly, the undersigned finds no evidence of deficits in adaptive functioning, such that the threshold criteria of listing 12.05 are not satisfied in this case and thus the listing is not met or medically equaled.

(Admin. Tr. 19, Doc. 11-2, at 20).

The ALJ ultimately concluded that Ms. Fitts was not under a disability as defined in the Social Security Act because Ms. Fitts retained the ability to engage in other work that exists in significant numbers in the national economy.

Following the ALJ's denial of her claims, Ms. Fitts requested administrative review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review. Together with her request, Ms. Fitts submitted additional medical evidence that was not before the ALJ when he issued his decision. (Admin. Tr. 4, Doc. 11-2, at 5; Admin. Tr. 549-555, Doc. 11-10, at 76-82). The Appeals Council denied Ms. Fitts's request for review on February 2, 2015, making the ALJ's January 2014 decision the Commissioner's final decision subject to review by this Court.

Ms. Fitts appealed the Commissioner's final decision by filing the complaint in this action on March 31, 2015, requesting "such relief as may be proper." (Doc. 1). On July 24, 2015, the Commissioner filed her answer. (Doc. 10). In her answer, the Commissioner maintains that the final decision denying Ms. Fitts's claim is correct and in accordance with the law and regulations, and that the ALJ's findings of fact are supported by substantial evidence. (Doc. 10 ¶5). Together with her Answer, the Commissioner filed a certified copy of the transcript of the entire record of proceedings relating to this case. (Doc. 11). This matter has been fully briefed by the parties and is now ripe for decision. (Doc. 12; Doc. 15; Doc. 16).

## II. STANDARD OF REVIEW

To receive benefits under Title XVI of the Social Security Act, the claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). To satisfy this requirement, the claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or

any other substantial gainful activity that exists in significant number in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

In evaluating the question of whether a claimant is under a disability as it is defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether the claimant is able to do her past relevant work, considering his current residual functional capacity ("RFC");[4] and, (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering her current RFC, age, education, and work experience. *Id.* The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents her from doing her past relevant work. 20 C.F.R. § 416.912(a). Once the claimant has established at step four that she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his RFC, age, education, and past work experience. 20 C.F.R. § 416.912(f).

---

[4] A claimant's RFC is the most a claimant can still do despite his limitations. 20 C.F.R. § 416.945(a)(1); *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). Before the ALJ goes from step three to step four, he or she assesses the claimant's RFC. 20 C.F.R. § 416.920(a)(4). The RFC is used at step four and step five to evaluate the claimant's case. *Id.*

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. §1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200(3d Cir. 2008); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536(M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Ms. Fitts is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); *Burton v. Schweiker*,

512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); *Ficca*, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

### III. ANALYSIS

In this case, Ms. Fitts has raised one assignment of error. She argues that the ALJ's determination that she did not meet listing 12.05C of 20 C.F.R. Part 404, Subpart P, Appendix 1 is not supported by substantial evidence because the ALJ did not apply the appropriate legal standard in finding that she did not suffer from "deficits in adaptive functioning consistent with listing-level intellectual disability." (Admin. Tr. 19, Doc. 11-2, at 20).

> Listing 12.05 is as follows:
>
> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation . . . .

20 C.F.R. Part 404, Subpart P, Appendix 1 §12.05. "The structure of listing 12.05 is different from that of the other mental disorders listings." 20 C.F.R. Part 404 Subpart P, Appendix 1 §12.00A. In order to satisfy listing 12.05C, Ms. Fitts must meet the preliminary substantive requirement of the description ("significantly subaverage intellectual functioning with deficits in adaptive functioning"), the temporal requirement of the diagnostic description (onset of the

- 9 -

impairment before age 22), and one of the four sets of criteria – in this case the paragraph C criteria. *Id.* ("If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing."). Here, the ALJ found that Ms. Fitts did not meet the preliminary substantive requirement of the diagnostic description, and as a result did not reach the issue of whether Ms. Fitts met the remaining criteria.[5] The Court is called upon to decide the issue of whether the ALJ applied the appropriate legal standard in finding that Ms. Fitts did not suffer from deficits in adaptive functioning, and whether the ALJ's conclusion on this issue is supported by substantial evidence.

---

[5] If a claimant's impairment meets or equals one of the listed impairments at step three, the claimant is considered disabled *per se*, and is awarded benefits. 20 C.F.R. § 416.920(d); *Burnett*, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, the claimant bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)(italics in original); 20 C.F.R. § 416.920(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. *Zebley*, 493 U.S. at 530.

While the Court does not make any findings of fact as to whether Ms. Fitts meets the other criteria of listing 12.05C, it notes that the record contains evidence that, if found credible by the ALJ, could satisfy the severity criteria of this listing. Ms. Fitts testified that she was in special education while in school. The result of her WAIS-IV IQ test revealed a full scale IQ of 70, and the ALJ found that Ms. Fitts suffered from other medically determinable severe impairments in addition to borderline intellectual functioning, including depressive disorder, cocaine and cannabis use disorder, arrhythmia, and obesity. *See Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 Fed. Reg. 50746, 50772 (Aug. 21, 2000)("We have always intended the phrase ["significant work-related limitation of function"] to mean that the other impairment is a "severe" impairment, as defined in §§ 404.1520(c) and 416.920(c).").

As an initial matter, the regulations that pertain to the diagnostic description of listing 12.05 do not purport to establish any standard for determining whether a claimant shows deficits in adaptive functioning that are consistent with a listing-level intellectual disability. Instead, the Social Security Administration has offered the following comment in explanation of its decision to *not* adopt a specific standard, or articulate a specific method of measurement:

> Comment: One commenter recommended that we use the definition of mental retardation (MR) found in the Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV), published by the American Psychiatric Association, as the definition of MR in listing 12.05 and 112.05.
>
> Response: We did not adopt the comment. The definition of MR we use in our listings is consistent with, if not identical to, the definitions of MR used by the leading professional organizations. The four major professional organizations in the United States that deal with MR have each established their own definition of MR. While all the definitions require significant deficits in intellectual functioning, as evidenced by IQ scores of approximately 70 or below, age of onset and the method of measuring the required deficits in adaptive functioning differ among the organizations.
>
> For example, the definition of MR used in the DSM-IV is predominantly based on (but not identical to) the revised definition of MR promulgated by the American Association on Mental Retardation (AAMR) in 1993. The DSM-IV states: "The essential feature of mental retardation is significantly subaverage general intellectual functioning (further defined as an IQ standard score of approximately 70 or below), that is accompanied by significant limitations in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. The onset must occur before age 18 years."
>
> Following publication of this new definition of MR by the AAMR, the American Psychological Association published its own "Manual of Diagnosis and Professional Practice in Mental Retardation, 1996." It states: "Mental retardation refers to (a) significant limitations in general intellectual functioning; (b) significant limitations in adaptive functioning, which exist concurrently; and (c) onset of intellectual and adaptive limitations before the age of 22 years." In its definition, (a) is defined as "* * * an IQ or comparable normed score that is two or more standard deviations below the population mean for the measure;" and

for (b), "* * * the criterion of significance is a summary index score that is two or more standard deviations below the mean * * *."

The definition of MR used by SSA in the listings is not restricted to diagnostic uses alone, nor does it seek to endorse the methodology of one professional organization over another. While capturing the essence of the definitions used by the professional organizations, it also is used to determine eligibility for disability benefits. SSA's definition establishes the necessary elements, while allowing use of any of the measurement methods recognized and endorsed by the professional organizations.

*Technical Revisions to Medical Criteria for Determinations of Disability*, 67 Fed.Reg. 20018, 20022 (Apr. 4, 2002). [6] Ms. Fitts argues that the 2002 Comment requires an ALJ to use one of the measurement methods recognized and endorsed by one of the four major professional organizations in the United States that deal with intellectual disability. (Doc. 12, at 7-10; Doc. 16, at 3-8). In response, the Commissioner contends that although the 2002 comment *allows* for the use of one such measurement method, the ALJ is not required to identify or apply one.

---

[6] The text of Social Security Administration's 2002 comment identifies only two of the four "major professional organizations in the United States that deal with MR" by name. Further, one of the two organizations identified by name in this comment, the American Association on Mental Retardation (AAMR), has changed its name to the American Association on Intellectual and Developmental Disabilities (AAIDD). As noted previously, the 2002 comment uses the outdated term "mental retardation." Moreover, there appears to have been a shift away from relying heavily upon IQ scores for diagnosis. The Social Security Administration in its 2002 comment that that the DSM-IV defines "the essential feature of mental retardation is significantly subaverage general intellectual functioning," 67 Fed. Reg. 20022, the DSM-5 provides that "the essential features of intellectual disability (intellectual developmental disorder) are deficits in general mental abilities *and* impairment in everyday adaptive functioning, in comparison to an individual's age-, gender-, and socioeconomically matched peers." DSM-5 at 37 (emphasis added). Furthermore, while prior versions of the DSM defined the various levels of impairment severity by IQ score, the newest version defines the level of severity of impairment on the basis of adaptive functioning. *Id.*

Instead, the Commissioner asserts that the ALJ's only obligation is to apply the Social Security's own standard of intellectual disability.

The issue raised by the parties in this matter is not unique. Several courts have grappled with the several issues relating to the obligations imposed by the Social Security Administration's 2002 comment, and remain divided on issues relating to the ALJ's evaluation of whether a claimant has adequately demonstrated deficits in adaptive functioning. One of the first cases to address such an issue was *Barnes v. Barnhart*, 116 F. App'x 934 (10th Cir. 2004)(not selected for publication). In *Barnes*, the Court reasoned that an ALJ's analysis was legally insufficient because it did not comply with the 2002 notice of proposed rulemaking requiring ALJs to choose and apply one of the measurement methods recognized and endorsed by a professional organization that deals with intellectual disability. *Id.* at 940. Conversely, the Seventh Circuit recently reached the opposite conclusion in *Charette v. Astrue* when it held that the ALJ is not required to use a specific measurement method when assessing deficits in adaptive functioning. 508 F.App'x 551 (7th Cir. 2013)(not selected for publication). District Courts have also remained divided on this issue. Some courts have held that an ALJ is required to adopt a definition and method of measurement recognized and endorsed by one of the professional organizations identified in the 2002 comment, s*ee e.g., Lancaster v. Colvin*, No. 15-cv-154, 2016 WL 705222 at *6 (W.D.Okla. Feb. 19, 2016)(remanding where the ALJ adopted his own standard of whether the capsule definition of intellectual disability was met); *Thomas v. Colvin*, No. 13-cv-267, 2014 WL 584048 at *11 (W.D.Pa. Feb. 14, 2014)(rejecting the Commissioner's argument that an ALJ is not required to articulate which standard or guideline he or she utilizes from one of the four major professional organizations in determining whether

a claimant has deficits in adaptive functioning), while other courts have permitted an ALJ to improvise his or her own definition. *Harper v. Colvin*, No. 2:13-cv-00446, 2014 WL 1278094 (W.D.Pa. Mar. 27, 2014)(holding that an ALJ is permitted to improvise his own definition and method of measurement for deficits in adaptive functioning so long as he articulates that standard in his decision). At least one court formulated its own definition. *Moore v. Colvin*, No. 4:12-cv-3132, 2013 WL 5466910 at *15 (D.Neb. Sept. 30, 2013)(noting that the Eighth Circuit has not required the use of criteria endorsed by outside organizations, and has instead interpreted "deficits in adaptive functioning" as the inability to cope with the challenges of everyday life).

The Commissioner argues that because the ALJ in this case "honed in on whether [Ms. Fitts] showed an inability to cope with the challenges of ordinary life," and cited to at least some evidence in support of that determination, the ALJ's decision should be affirmed. (Doc. 15, at 12). The Court is not persuaded by the Commissioner's argument. As discussed above, this Court is charged with the responsibility of reviewing not only whether the Commissioner's findings of fact are supported by substantial evidence, but also whether this finding was based upon the correct application of the law. It is also well-established that in order to facilitate this review, an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). In choosing not to adopt one definition or method of measurement for deficits in adaptive functioning, the Social Security Administration leaves it to the ALJ to choose among existing standards, or perhaps even devise his own. When read in conjunction with *Cotter*, the Court finds that this open-ended approach to evaluating deficits in adaptive functioning does impose at least some obligation

upon the ALJ to identify or articulate the standard used, if only so that this Court can fulfill its obligation to provide meaningful judicial review. *See e.g., Thomas*, 2014 WL 584048 at *11 ("Courts should not be required to guess what standard an ALJ has chosen to apply when conducting its substantial evidence review of the ALJ's decision."); *Harper*, 2014 WL 1278094 at *8 (affirming an ALJ's determination that a claimant did not have listing level deficits in adaptive functioning because the ALJ sufficiently explained the benchmark he used to arrive at his conclusion).

Further, to the extent that the Commissioner argues that remand is not warranted in this case because there is no possibility that remand would change the result in this case, the Court disagrees. Ms. Fitts testified that she attended special education beginning in elementary school, (Admin. Tr. 50, Doc. 11-2, at 51), was unable to pass her GED test, (Admin. Tr. 45, Doc. 11-2, at 46), has never had a driver's license, (Admin. Tr. 49, Doc. 11-2, at 50), does not know how to use a computer, (Admin. Tr. 54, Doc. 11-2, at 55), and has only a sporadic part-time work history. Moreover, although the ALJ notes that Ms. Fitts was able to care for her grandchildren, attend to her personal care, complete household tasks, cook, use public transportation, shop, handle money, and manage her finances independently, he failed to address Ms. Fitts' testimony establishing her level of functioning in each of these tasks. For example, Ms. Fitts reported that she cares for her grandchildren as best she can, but is not left alone with young children who are unable to care for themselves or left alone with any of her grandchildren for more than short visits. (Admin. Tr. 62, Doc. 11-2, at 63). Ms. Fitts reported that she is able to use public transportation, but is unable to do so without assistance. She relies on her ex-husband, and bus drivers to know which bus to take. (Admin. Tr. 61, Doc. 11-2, at 62). Last,

although Ms. Fitts reported that she could count money and bring it somewhere to pay a bill, she admitted that she has never managed her own finances or had a bill in her name. (Admin. Tr. 59-60, Doc. 11-2, at 61). Further, after meeting with Ms. Fitts, Dr. Fischetto opined that Ms. Fitts would be unable to manage her own finances without assistance. Based on this evidence, the Court finds that this is a borderline case requiring further review.

IV.   CONCLUSION

Based on the foregoing, the Commissioner's final decision shall be **VACATED** and this case shall be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). On remand, after a new administrative hearing, the ALJ shall articulate the standard and method of measurement he applies when evaluating whether Ms. Fitts has listing-level deficits in adaptive functioning.

A remand under sentence four of 42 U.S.C. § 405(g) requires the Court to enter a separate final judgment "affirming, modifying, or reversing the decision of the Commissioner" pursuant to Rule 58 of the Federal Rules of Civil Procedure. *See Shalala v. Schaefer*, 509 U.S. 292, 296–97 (1993); *Kadelski v. Sullivan*, 30 F.3d 399, 401 (3d Cir. 1994). Accordingly, the Clerk will be directed to enter final judgment in favor of Ms. Fitts.

An appropriate order shall follow.

Dated: February 29, 2016                                *s/ Karoline Mehalchick*
                                                        **KAROLINE MEHALCHICK**
                                                        **United States Magistrate Judge**